FILED
2009 Jan-30 PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIK KEMP, et al., | ] |
| | ] |
| Plaintiffs, | ] |
| | ] |
| vs. | ] 2:07-CV-01555-LSC |
| | ] |
| H.D. INDUSTRIES, INC., | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, H.D. Industries, Inc. ("H.D. Industries"). (Doc. 43.)[1] Plaintiffs Erik Kemp and Sandra Kemp sued H.D. Industries for violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD");

---

[1]Defendant's motion for summary judgment was initially filed and briefed on October 30, 2008. (Doc. 27.) It came to the Court's attention, however, that errors in the Complaint needed to be corrected. Following Plaintiffs' submission of a revised Amended Complaint, Defendant renewed its motion for summary judgment. (Doc. 43.) The revisions to Plaintiffs' Complaint were not pertinent to the issues before the Court at summary judgment. Therefore, all memoranda and evidence filed initially in support of, or in opposition to, Defendant's first summary judgment motion were considered in issuing this Memorandum of Opinion.

negligent/wanton design, manufacture, assembly or installation of component parts, and failure to warn; negligent marketing and sale; negligent purchase and supply of defective component parts; and placing its product into the stream of commerce in a condition unfit for its intended purpose and not reasonably safe when applied to its intended use, after Mr. Kemp suffered injuries while cleaning the interior of a Pro-Patch Asphalt Pothole Patcher. Plaintiff Sandra Kemp has also alleged a claim for loss of consortium. The issues raised in Defendant's motion for summary judgment have been briefed by both parties and are now ripe for decision. Upon full consideration of the legal arguments and evidence presented by the parties in this case, Defendant's motion will be granted in part and denied in part.

II.     Facts.[2]

Plaintiff Erik Kemp began working for the City of Tuscaloosa, Alabama's ("the City") "asphalt crew" as an equipment operator in 2003. One of Mr.

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Kemp's job duties as an equipment operator was to clean the hopper of the Pro-Patch Asphalt Pothole Patcher ("the Pro-Patch"), which the City had purchased in 2001, after a fire destroyed an older Pro-Patch.

The Pro-Patch was designed and manufactured by the defendant, H.D. Industries. The machine consists of a truck chassis and a rectangular hopper mounted on the rear of the chassis. Hot asphalt for pothole repairs is stored in the hopper. The interior walls of the hopper are V-shaped at forty-five degree angles, and an agitator—or a rotating screw-like mechanism—near the bottom of the hopper stirs asphalt to keep it from hardening. An auger located below the agitator releases the asphalt out of the rear of the hopper and onto the street. Power levers at the back of the hopper control the auger and agitator. Steel doors cover and insulate the hopper. When open, the doors block access to the hopper from the sides, making it necessary for an individual to climb into the hopper to clean it.

When the City purchased its first Pro-Patch in 1991, an employee of H.D. Industries traveled to Tuscaloosa and trained the City's asphalt crew on how to safely operate, clean, and maintain the machine. Lewis Willis, Mr. Kemp's supervisor, testified that he was trained by the H.D. Industries representative

to shut all power supplies off before anyone entered the hopper for cleaning. Moreover, the operator's manual and warning decals cautioned users about amputations hazards if the "de-energizing procedure" was not followed. Decals on the hopper read:

> Rotating shaft can cause serious injuries or death. To avoid injury or death on rotating shaft, disengage PTO,[3] turn off truck engine, remove keys from ignition switch, lock truck door and place keys in your pocket before entering asphalt truck.

and

> Amputation hazard. Rotating auger and agitator will cause severe injury or death. Keep hands and body clear of asphalt hopper. Stop machine and turn power switch to off before cleaning, oiling or repairing this equipment.

Mr. Kemp and other asphalt crew employees, however, have testified that they were instructed by their supervisor to clean the hopper in a different manner. The crew members would climb into the hopper, spread their legs to straddle the agitator, wedge their feet against the sides of the hopper, spray diesel fuel to loosen the asphalt, and use a shovel to chip at the

---

[3]PTO is an abbreviation for "power takeoff."

hardened asphalt. While cleaning, the crew kept the truck engine running, the PTO switch engaged, and the auger and agitator rolling. Mr. Kemp was never told to follow a "de-engergizing procedure," and he never saw anyone on the asphalt crew turn off the truck's engine and PTO switch before climbing into the hopper.

On September 16, 2005, Mr. Kemp and fellow crew member, Reginald Davis, were instructed to clean the Pro-Patch hopper. They left the truck running and kept the PTO switch in the "on" position. Mr. Kemp climbed into the hopper, and Davis started the asphalt agitator. About ten to fifteen seconds later, Mr. Kemp's right foot slipped. The agitator hooked Mr. Kemp's leg, pulled him in, and pinned him to the hopper floor. Mr. Kemp suffered severe injuries, including burns to large portions of his body and a broken leg.

III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Defendant has moved for summary judgment on all of Plaintiffs' claims. H.D. Industries contends that it is entitled to judgment as a matter of law because (1) Mr. Kemp negligently contributed to his accident; (2) the City's conduct was an intervening and superseding cause of Mr. Kemp's injuries; (3) Plaintiff has not offered substantial evidence that a safer, practical, alternative design for the Pro-Patch was available to H.D. Industries at the time of manufacture; and/or (4) the Pro-Patch's danger was obviated by an adequate warning. Defendant also argues that an adequate warning precludes Plaintiffs' "failure to warn" claim, and there is insufficient evidence to support claims of "wantonness." The Court addresses each of these assertions in turn.

A.   Contributory Negligence.

"In order to establish the affirmative defense of contributory negligence [which the defendant bears the burden of proving], there must be a showing that the party charged had knowledge of the dangerous condition; that he

appreciated the danger under the surrounding circumstances; and that, failing to exercise reasonable care, he placed himself in the way of danger." *Gulledge v. Brown & Root, Inc.*, 598 So. 2d 1325, 1327 (Ala. 1992) (quoting *Chilton v. City of Huntsville*, 584 So. 2d 822, 824-25 (Ala. 1990)).  "Although contributory negligence may be found to exist as a matter of law when the evidence is such that all reasonable people must reach the same conclusion, the question of the existence of contributory negligence is normally one for the jury."  *Id*.  In fact, "summary judgment based on the doctrine of contributory negligence is seldom proper."  *Id*. at 1330.

While Defendant argues that the evidence shows Plaintiff understood the rotating agitator was dangerous, it has not established its burden of *proving* that Mr. Kemp failed to exercise reasonable care.  The Alabama Supreme Court case of *Gulledge v. Brown & Root, Inc.*, 598 So. 2d 1325 (Ala. 1992), is instructive.[4]  In *Gulledge*, the court determined that reasonable people could disagree whether the plaintiff acted with ordinary care when she attempted to clean a moving conveyor belt because there was evidence that:

---

[4]Strangely, neither party cites to this case in their arguments to the Court.

>> (1) she appreciated that the operation was dangerous, (2) she was aware that the cleaning operation violated earlier safety procedures, (3) she had been instructed by her supervisor to clean the conveyor without turning it off, (4) she had seen a demonstration as to how the conveyor could be cleaned without stopping its operation, and (5) this cleaning procedure had been used by other employees prior to her injury.

*Id*. at 1330.  The court concluded that "[a]lthough the simple instruction by her supervisor was not in itself sufficient to raise an issue of material fact as to whether Gulledge was negligent in attempting to clean the conveyor, her evidence that a cleaning technique was demonstrated and used does make the question of her negligence an issue for the jury." *Id*.

Viewing the evidence in the light most favorable to the plaintiffs, there is evidence that Mr. Kemp and his co-workers were instructed to clean the Pro-Patch by climbing into the hopper, wedging their feet on the sides, and chipping away at the asphalt while the agitator was energized and rotating. It is undisputed that everyone on the asphalt crew cleaned the hopper in this manner, and Mr. Kemp never saw anyone fall nor did he hear of anyone on the crew being injured.  This evidence is sufficient to make the question of Mr. Kemp's negligence one for a jury.

B.   Intervening and Superseding Cause.

Under Alabama law, "a defendant who creates a dangerous 'condition' is not responsible for a plaintiff's injury that results from the intervention of another agency, if at the time of the defendant's original negligence the intervening agency could not reasonably be foreseen." *Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1275 (Ala. 1993) (citations omitted).  "Such an unforeseen agency, which breaks the chain of causation that otherwise might have linked the defendant's negligence to the plaintiff's injury, has been referred to as an 'intervening efficient cause.'" *Id.* (citing *Gen. Motors Corp. v. Edwards*, 482 So. 2d 1176, 1194 (Ala. 1985)).  "In order for conduct to be considered an intervening efficient cause, it must (1) occur after the defendant's negligent act, (2) be unforeseeable to the defendant at the time he acts, and (3) be sufficient to be the sole cause-in-fact of the plaintiff's injury." *Id.*

H.D. Industries argues that even if this Court assumes it were negligent, the City disregarded the proper safety procedures for cleaning the Pro-Patch hopper, and the City's negligence precludes the defendant's liability. However, the Court finds that there is sufficient evidence in the record to

create a question of material fact whether the City's actions were foreseeable to the defendant. Therefore, summary judgment must be denied on this issue.

    C.    Safer, Practical, Alternative Design.

Defendant also contends that Plaintiff has not offered substantial evidence of a safer, practical, alternative design for the Pro-Patch, which would have eliminated or reduced Mr. Kemp's injuries and was available to H.D. Industries at the time of manufacture, as required to establish an AEMLD claim. *See Bagley v. Mazda Motor Corp.*, 864 So. 2d 301, 312 (Ala. 2003). "The existence of a safer, practical, alternative design must be proved by showing that:

> (a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
> (b) taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

*Id*. (internal quotations omitted).

H.D. Industries does not challenge the admissibility of Dr. Bryan Durig's testimony as expert testimony in this case. Instead, Defendant argues that Dr. Durig's proposed alternative designs are only speculative because they were not tested with the Pro-Patch, and there is insufficient evidence that Mr. Kemp's injuries would have been reduced or prevented had the proposed designs been utilized. The Court finds, however, that Dr. Durig's deposition testimony creates a genuine issue of material fact whether a separate solenoid shutoff valve or a separate system using pneumatic cylinders to open/close the hopper doors was a feasible, safer, practical, alternative design. *See Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 859-60 (Ala. 2002). Dr. Durig testified that the technology for the designs was available when H.D. Industries manufactured the Pro-Patch at issue; he testified that the cost of the solenoid shutoff valves would probably run around $200 for a set of four and an air compressor for the pneumatic cylinders would run around $29; and he testified that both designs would function on the Pro-Patch and would not interfere with its efficiency. (Durig Dep. 115-42.) While Dr. Durig did not testify that the designs would have reduced or prevented Mr. Kemp's injuries,

the proposed designs would have cut power to the agitator while the hopper doors were open—preventing Mr. Kemp from being pulled into and pinned to the bottom of the hopper by the rotating agitator.  This is sufficient to send Plaintiffs' proposed alternative designs to a jury.  *See Hannah*, 840 So. 2d at 859.

    D.    Adequate Warning.

H.D. Industries has also requested summary judgment based on "adequate warning." (Doc. 28 at 19.)  Defendant contends that if the Pro-Patch was unreasonably dangerous, that danger was obviated by warning labels on the hopper.

"[T]he presence of an adequate warning may be part of a defendant's assumption of the risk defense." *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 132-33 (Ala. 2003) (citing *Caudle v. Patridge*, 566 So. 2d 244, 247-48 (Ala. 1990) ("The three affirmative defenses available to a seller of a defective product are: 1) no causal relation; 2) assumption of the risk; and 3) contributory negligence (misuse of the product).")).  "In order to establish assumption of the risk as a matter of law, the evidence must show that the plaintiff discovered the alleged defect, was aware of the danger, proceeded

unreasonably to use the product, and was injured." *Horn v. Fadal Machining Ctrs., LLC*, 972 So. 2d 63, 75 (Ala. 2007) (quoting *Sears v. Waste Processing Equip., Inc.*, 695 So. 2d 51, 53 (Ala. Civ. App.1997)). "'[T]he plaintiff's state of mind is determined by [a] subjective standard,' not the objective standard of reasonability." *Id.* (quoting *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 27 (Ala. 2002)). Aside from its assertion that "adequate warning" was provided, Defendant does not argue nor establish the elements of an "assumption of the risk" defense. Because H.D. Industries has not met its burden to prove this affirmative defense, summary judgment cannot be granted on this basis.

    E.    Failure to Warn.

Summary judgment will be granted, however, with regard to Plaintiffs' "negligent/wanton failure to warn" claim (Count Three). In Plaintiffs' response, they state that they are abandoning recovery based on "failure to warn." (Doc. 31 at 26.)

    F.    Wanton Misconduct.

Finally, H.D. Industries argues that Plaintiffs are not entitled to punitive damages for wanton misconduct. Defendant cites to evidence that Harold Dillingham, the president of H.D. Industries, consulted OSHA and a Cigna

employee about the design of the Pro-Patch, and even tried to design a kill-switch that would cut power to the auger and agitator when the hopper doors were opened.  However, there is also evidence, when viewed in the light most favorable to the plaintiffs, which shows that Dillingham expected individuals to climb into the hopper while it was activated, knew others had been injured while cleaning the hopper of a Pro-Patch years before Mr. Kemp's accident, and did not design a functional safety switch until 2004.  Furthermore, questions exist regarding H.D. Industries' alleged efforts to distribute the safety switch to existing Pro-Patch users; no one at the City recalls being informed that a safety switch was available.

Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Bozeman v. Cent. Bank of the South*, 646 So. 2d 601, 603 (Ala. 1994) (quoting *Bishop v. Poore*, 475 So. 2d 486, 487 (Ala. 1985); *Anderson v. Moore Coal Co.*, 567 So. 2d 1314, 1317 (Ala. 1990)).  "Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So.

2d 1001, 1003 (Ala. 1992). While Defendant argues that Plaintiffs cannot prove wanton misconduct by "clear and convincing evidence," it has not established that there is *no* evidence from which a jury could infer wantonness. Furthermore, viewing the evidence in the light most favorable to the plaintiffs, this Court finds that a reasonable jury could find wanton misconduct in this case. This question is one that must be determined at trial.

V.   Conclusion.

For the reasons stated above, Defendant's motion for summary judgment will be granted in part and denied in part. A separate order will be entered.

Done this 30th day of January 2009.

L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
153671